**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

KYLE P. TATE,

CASE NO.: 6:26-cv-1204-GAP-DCI

Plaintiff,

v.

FOX NEWS NETWORK, LLC, a Delaware Limited Liability Company; FOX TELEVISION STATIONS, LLC, a Delaware Limited Liability Company; and OREGON TELEVISION, LLC, an Oregon Limited Liability Company,

Defendants.
_______________________________________/

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**

Plaintiff Kyle P. Tate, by and through undersigned counsel, responds in opposition to Defendants' Motion to Dismiss First Amended Complaint (Doc. 35), and states:

## I. INTRODUCTION

The probable cause affidavit says that Mr. Tate "approached them with a firearm telling them to get off his property." Doc. 27-1 at 2. It asserts two charges, grand theft and criminal mischief. It identifies no firearm offense, and the officer who took the children's statements charged none. FAC ¶¶ 32-33.

Fox published that Mr. Tate "pulls gun on kids." FAC ¶¶ 35, 42. Within its first seconds, Fox's own video, filed with this motion, fills the screen with his

booking photograph while the anchor tells viewers that "[t]his attorney is accused of pointing a gun at kids in his neighborhood." Doc. 36-1 at 0:01-0:08. Walking toward someone with a firearm is not pulling a gun on him, and it is not pointing one at him. Pointing or drawing a gun on a child is the conduct at the core of aggravated assault with a deadly weapon, a felony under section 784.021, Florida Statutes, and of improper exhibition under section 790.10, offenses with which no one ever charged Mr. Tate. FAC ¶¶ 32, 84-85. Fox knew the difference. The same day, in the same coverage, it wrote the accurate version: the article says Mr. Tate was jailed "for allegedly approaching three kids with a gun," the chyron says he was "accused of approaching kids with gun," and the caption on Fox's own video page repeats the article. FAC ¶¶ 36, 57; Doc. 36-2 at 1. Fox reserved the unqualified "pulls gun" for its two headlines and the title of that video, and "pointing a gun" for its newscasts. FAC ¶¶ 35, 42, 58; Doc. 36-2 at 1.

Two years later, a week after Mr. Tate's retraction notice, Fox made the matter worse. It told its audience only that "attorney Kyle Tate" "allegedly approached 3 minors who were fishing" and that "the case was expunged," and left out everything that once explained the encounter. Doc. 36-4. Fox now says that word "conveys no defamatory meaning at all." Doc. 35 at 21. It does not stand alone, and Fox is the party that removed its context.

The Court may watch Fox's video; it confirms the pleading. What remains of the motion is an affirmative defense the publications themselves defeat, a notice argument Fox answered on the air, an entity argument that Fox's own copyright

notices, correspondence, and FCC records contradict, and merits argument that assumes away the allegations the Court must accept.

## II. ARGUMENT

### A. The broadcasts Fox filed confirm the pleading, and the declarations cannot contradict it.

A complaint survives if it states a claim "plausible on its face," with its well pleaded allegations accepted as true and reasonable inferences drawn for the plaintiff. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court may consider material outside the complaint, including video, only if it is central to the claims and its authenticity is not challenged. *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002); *Johnson v. City of Atlanta*, 107 F.4th 1292, 1298-1300 (11th Cir. 2024). When it does, it "must construe all ambiguities in the video footage in favor of the plaintiff," *Jackson v. City of Atlanta*, 97 F.4th 1343, 1350 (11th Cir. 2024) (quoting *Baker v. City of Madison*, 67 F.4th 1268, 1277 (11th Cir. 2023)), and credits the video over the pleading only if it "obviously contradicts" the pleaded facts, *Baker*, 67 F.4th at 1277-78.

Mr. Tate does not dispute that the two videos Fox filed show what it published, and the Court may view them. Doc. 36-1; Doc. 26. They confirm the pleading. *See* Part II.C. Other airings the pleading alleges are not before the Court. FAC ¶ 58. Fox's account of its video has shifted: its first motion told the Court that the phrase "developing story" "appears nowhere in the Broadcast," Doc. 18 at 19, and the 5:30 p.m. segment it has since filed opens on a "DEVELOPING STORY"

graphic. Doc. 36-2 at 1. What the Court may not do is accept the declarations' characterizations over the pleading. The declarant's statements that Exhibit 1 is "the 5:30 p.m. portion" of the broadcasts and that Exhibit 2 shows the video "as it was embedded on Fox 35 Orlando's website on May 2, 2024," Doc. 36 ¶¶ 2-3, are testimony, and Exhibit 2 is a 2026 capture: its footer reads "©2026 FOX Television Stations." Doc. 36-2 at 6. It does prove that the page titled "HOA president pulls gun on kids: officials" was still online in 2026, after Fox's Vice President of Legal Affairs wrote to Mr. Tate's counsel on April 10, 2026, "We are also removing the original stories online." FAC ¶ 136; Ex. A at 1. To the extent Fox offers its declarations for any fact beyond what the videos and pages show, they are "matters outside the pleadings" that must be excluded or the motion converted. Fed. R. Civ. P. 12(d); *Trustmark Ins. Co. v. ESLU, Inc.*, 299 F.3d 1265, 1267 (11th Cir. 2002).

B. <u>The fair report privilege is a defense Fox must establish from the publications themselves.</u>

The privilege is qualified, *Woodard v. Sunbeam Television Corp.*, 616 So. 2d 501, 502 (Fla. 3d DCA 1993), and an affirmative defense supports dismissal only when it "clearly appears on the face of the complaint." *Quiller v. Barclays Am./Credit, Inc.*, 727 F.2d 1067, 1069 (11th Cir. 1984), *aff'd and reinstated on reh'g*, 764 F.2d 1400 (11th Cir. 1985) (en banc); accord *Linafelt v. Bev, Inc.*, 662 So. 2d 986, 990 (Fla. 1st DCA 1995) (qualified privilege "is an affirmative defense" that, where it "does not appear on the face of [the] complaint," "should not have been considered on a motion to dismiss"). The court compares the publication with

the record, and the privilege "would not apply" to an interview and the reporter's "narrative . . . relating to the interview," which "are not public records." *Heekin v. CBS Broad., Inc.*, 789 So. 2d 355, 360 (Fla. 2d DCA 2001), *disapproved on other grounds by Anderson v. Gannett Co.*, 994 So. 2d 1048, 1051 (Fla. 2008). Here the comparison defeats the privilege.

C. Fox's publications are not a fair report of the affidavit.

A report need not be "exact in every immaterial detail," *Woodard*, 616 So. 2d at 503 (quoting Restatement (Second) of Torts § 611 cmt. f (1977)), but a material departure is not protected, and *Stewart* applied the privilege only after finding "no material differences." *Stewart v. Sun Sentinel Co.*, 695 So. 2d 360, 362 (Fla. 4th DCA 1997). A report of police activity is privileged, but

> it is necessary that the statement not go further than a mere report of the news by making charges directly or by inference, insinuation, or assumption, that one is guilty of a crime . . . . [I]f any requisite is lacking, no protection by qualified privilege is available.

*O'Neal v. Tribune Co.*, 176 So. 2d 535, 547 (Fla. 2d DCA 1965). Fox went further, and its own chart shows how: it sets the affidavit's "approached them with a firearm telling them to get off his property" beside the headline "pulls gun on kids." Doc. 35-1 at 1. The affidavit describes a man who approached the children with a firearm and told them to leave, and it charges two property offenses and nothing else. Fox chose "pulls" for its headlines, in the present tense, and "pointing" for its newscasts, and attached both to Mr. Tate by name, age, profession, and booking photograph. FAC ¶¶ 35, 42, 45-46, 57; Doc. 36-1 at 0:01-0:08; Doc. 26. That Fox

never cited sections 784.021 or 790.10, Doc. 35 at 17, is beside the point; the question is whether Fox described the conduct the record described. It did not.

Three features of Fox's coverage put it outside the privilege. First, Fox contradicted itself. It used the affidavit's verb in the article's lead and body, in the chyron, and in the caption on its own video page, and departed from it in its headlines, the national article's lead, its player and photograph captions, the video's title, and its newscasts' narration. FAC ¶¶ 36, 40, 46, 57-60, 96; Doc. 35-1 at 1-3. The contradiction sits within a single exhibit Fox filed: on Doc. 36-2 at 1 the video's title reads "HOA president pulls gun on kids: officials" while the caption directly beneath says Mr. Tate was jailed "for allegedly approaching three kids with a gun." The cases Fox cites for editorial "color," Doc. 35 at 19, permit a publisher to add color to a record; they do not permit it to write an accurate summary and then replace the act it describes with a different one. Nor does the article body cure the headline. Florida reads "[b]oth the headline and the item to which it is attached" together "as one document," and looks to "the over all effect of the language." *O'Neal*, 176 So. 2d at 548. A present tense "pulls gun" headline over a man's name sets that effect, and a later line reporting theft and mischief charges does not undo it. Defamation law reaches "the defendant who has the details right but the 'gist' wrong." *Jews for Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1108 (Fla. 2008) (quoting W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 116, at 117 (5th ed. Supp. 1988)).

Second, Fox claimed attribution it did not have, attributing the accusation to "officials" and to "court docs," both plural and unqualified, when there was one affidavit recording one hearsay allegation and producing no firearms charge. FAC ¶¶ 33, 42, 59, 122; Doc. 35-1 at 1, 3. Fox's answers, that the affidavit "names three officials" and that a booking photograph is a court document, Doc. 35 at 19, do not survive a reading of the affidavit. Doc. 27-1 at 1-2. Because the plural can reasonably convey independent official confirmation, how readers understood it is for the trier of fact. *Wolfson v. Kirk*, 273 So. 2d 774, 778-79 (Fla. 4th DCA 1973); *Perry v. Cosgrove*, 464 So. 2d 664, 666 (Fla. 2d DCA 1985).

Third, Fox added material from outside the record. The privilege protects an account of a record, not the unnamed mother's accusation that "[a] gun should've never been pulled on them," which "appears nowhere in the Probable Cause Affidavit." FAC ¶ 39; *see Heekin*, 789 So. 2d at 360. The broadcasts go further. The 5:30 p.m. segment tells viewers, over the booking photograph, that Mr. Tate is "accused of pointing a gun at kids." Doc. 36-1 at 0:01-0:08. The 10:00 p.m. segment says he is "accused of pointing a gun at 3 kids," that "just pulling out a gun was uncalled for," and that a child "ran for his life into the woods away from a man threatening him with a shotgun." Doc. 26. No record accuses Mr. Tate of pointing a gun at anyone, and the affidavit says nothing about a shotgun or a child fleeing. Fox's eleven statement chart omits every one of those lines. Doc. 35-1 at 3. They are part of the broadcasts the pleading challenges, FAC ¶¶ 55-58, 101-04, 121, and they are the gist it alleges: that the broadcasts "communicated to ordinary viewers

that Plaintiff committed serious firearm-related misconduct involving children," FAC ¶ 104, through the "accused of" formulation the pleading challenges. FAC ¶ 84. The pleading therefore reaches these statements now; Mr. Tate will nonetheless seek leave before the October 1, 2026 amendment deadline, Doc. 24, to add the verbatim language for precision, and a motion to extend that deadline is pending. Doc. 43.

D. The April 10, 2026 publication is not a correction, and it is independently actionable.

Counts VII and VIII arise from a separate publication aired nearly two years later. FAC ¶¶ 127-28. Fox defends it in two sentences: the 2026 Broadcast "does not mention a firearm at all," Doc. 35 at 17, and "the statement that Tate merely 'approached' the children, which is all the statement says, conveys no defamatory meaning at all," Doc. 35 at 21. Both propositions prove Mr. Tate's point. Seven days after written notice of exactly what was false, FAC ¶¶ 6, 64, Fox published this:

> In May 2024, we brought you a story about attorney Kyle Tate who was also serving as an HOA President. He allegedly approached 3 minors who were fishing in the lake at Stillwater Lakes Subdivision. After receiving a letter from an attorney working for Mr. Tate's law firm, we learned there is an update to that story. Based on WOFL's research, we discovered the case was expunged and the State Attorney's office has no record in its system. We reached out to Mr. Tate's attorneys at his law firm for clarification about information contained in the letter, and have not heard back.

Doc. 36-4. It did not say that no firearm offense was ever charged, that the only charges were the two property offenses Fox itself had reported in 2024, that the State Attorney declined to file an Information, or that the children were on

association common area property and were being told to leave by its president. It did not retract "pulls gun on kids," and it left the headline, the video title, and the national article in place. FAC ¶¶ 54, 67, 72, 80.

What Fox published instead was worse than what it withheld. The only conduct the 2026 publication attributes to Mr. Tate is that he, a named adult male attorney, "approached 3 minors," and that a criminal "case" followed and was "expunged." A viewer is left to supply the missing offense, and the offense that answers to an adult man's unexplained "approach" to three children is an offense against the children themselves. Fox created that imputation by subtraction.

Florida law reaches exactly this. Defamation by implication arises where a defendant "juxtaposes a series of facts so as to imply a defamatory connection between them, or creates a defamatory implication by omitting facts," and "literally true statements can be defamatory where they create a false impression." *Rapp*, 997 So. 2d at 1106-08 (quoting Keeton et al., *supra*, § 116, at 117). Fox's entire defense of the 2026 publication, that each word is true and that it mentions no gun, is the setting in which implication liability exists. Fox also knew the distinction it was erasing. Less than two hours before the scheduled 6:00 p.m. broadcast, its Vice President of Legal Affairs wrote that it "does seem unusual that an expungement would be necessary if there were no conviction, much less if charges were not even filed." FAC ¶¶ 136, 144; Ex. A at 1. Fox understood that an expunction after a conviction and an expunction after the State declined to file charges are different things, and it reported the expunction without saying which. And the closing line,

that Fox "reached out" and "have not heard back," followed an email sent at 4:12 p.m. that first disclosed Fox's plan to broadcast and allowed until 4:30 p.m. for a response; Fox's two earlier emails had asked only for a time to talk, and it posted the online version at 4:33 p.m. Ex. A at 1-2; Doc. 36-4; FAC ¶¶ 67(e), 143.

The fair report privilege has nothing to attach to. By April 10, 2026 the arrest record had been ordered expunged, FAC ¶ 63; Doc. 27-5 at 2, and what the Department of Law Enforcement retains of an expunged record is confidential and "not available to any person or entity except upon order of a court of competent jurisdiction." § 943.0585(6)(a), Fla. Stat. Fox's chart nonetheless justifies the 2026 statement by pairing it with the 2024 affidavit, Doc. 35-1 at 4, while its own exhibit attributes the broadcast not to any record but to Fox: "Based on WOFL's research, we discovered the case was expunged." Doc. 36-4. A privilege for fair reports of official records does not protect a publisher's account of its own research.

E. Fox answered the section 770.01 notice on the air, and no defendant can now claim it lacked notice.

Section 770.01 requires notice "specifying the article or broadcast and the statements therein which he or she alleges to be false and defamatory." It does not require a transcript. For a broadcast, the notice need only "set out the substance of the spoken words with sufficient particularity." *Cousins v. Post-Newsweek Stations Fla., Inc.*, 275 So. 3d 674, 680 (Fla. 3d DCA 2019) (quoting *Edward L. Nezelek, Inc. v. Sunbeam Television Corp.*, 413 So. 2d 51, 55 (Fla. 3d DCA 1982)). A verbatim quotation requirement "appears neither in the text of the notice statute

nor in the Florida cases applying it." *Rendón Delgado v. Bloomberg L.P.*, No. 19-14046, slip op. at 15 (11th Cir. May 23, 2025) (unpublished).

Fox says the April 3, 2026 letter "specified neither any particular broadcast nor any allegedly defamatory statements featured therein." Doc. 35 at 12-13. The letter says otherwise. It identified "broadcast segments, interview footage, and all derivative or substantially similar publications" as false; specified the "pulls gun" formulation and "any substantially similar formulation"; stated that Mr. Tate "did not pull a gun on anyone, did not point a firearm at anyone, and did not threaten anyone with a firearm"; demanded removal of "television broadcast segments"; and enclosed a screenshot of the embedded video player. Doc. 27-6 at 1-2, 4; FAC ¶¶ 20, 64. That is the substance of the spoken words: the broadcasts said Mr. Tate was "accused of pointing a gun at kids," and the letter said he "did not point a firearm at anyone." Fox concedes the letter "featured a screenshot of the 10:00 p.m. broadcast from May 2, 2024." Doc. 35 at 12. Its declarant adds that the 10:00 p.m. broadcast was published online embedded in the article the letter identified by headline and URL. Doc. 36 ¶ 6; Doc. 20 ¶ 3; Doc. 27-6 at 1. Fox also now concedes that "HOA president pulls gun on kids: officials" was not broadcast at all but posted as the title of the video on its website, Doc. 35 at 8 n.5, where it falls squarely within the letter's demand to remove "any text stating or implying that Mr. Tate 'pulls gun on kids fishing on property,' 'pulled a gun on kids,' or any substantially similar formulation." Doc. 27-6 at 2. *Rendón* barred the broadcast

claims because the letter there "only mentions the article and makes no reference to any interviews or broadcasts." *Rendón*, slip op. at 18.

The Court need not parse the letter, because Fox answered it. The notice exists to give the publisher an opportunity "to make a full and fair retraction in mitigation of the damages," *Ross v. Gore*, 48 So. 2d 412, 415 (Fla. 1950), and Fox used it. On April 10, 2026 the station told viewers that "[a]fter receiving a letter from an attorney working for Mr. Tate's law firm, we learned there is an update to that story," identified the story as its own May 2024 report, reported the result of "WOFL's research," and said it had contacted Mr. Tate's firm "for clarification about information contained in the letter." Doc. 36-4. A publisher that cannot identify what it has been asked to correct does not broadcast a correction about it. Fox cannot rely on that broadcast as a defense to Counts VII and VIII while telling the Court, as to Counts III and VI, that it never learned what it was supposed to correct. The Third District rejected the same argument in *Cousins*, 275 So. 3d at 681, where a letter identifying broadcasts during a three week window and the substance of three statements sufficed, and the station's partial clarification "lends support to the conclusion that Post-Newsweek was on notice."

The same answer disposes of the entity version of the argument. Fox says Oregon Television, LLC received no notice until July 20, 2026. Doc. 35 at 13; Doc. 35-1 at 1-3. The April 3 notice was addressed to "WOFL, d/b/a FOX 35 Orlando," "Attention: General Manager and News Director," at the station's own studio. Doc. 27-6 at 1. Fox Television Stations' registered agent received it April 7, and Fox's

Vice President of Legal Affairs answered it in correspondence titled "Fox Television Stations, LLC (WOFL) was served with that attached Demand Letter," directing any response to "the News Director (Melissa Medalie)," Fox's declarant on this motion. Ex. A at 1, 3-4; FAC ¶¶ 20, 68-69. Whichever entity publishes WOFL, the personnel who make that station's editorial and legal decisions received the notice, understood it, and answered it on the air. Section 770.01 asks for nothing more. A party that removed this action captioned against "FOX TELEVISION STATIONS, LLC dba WOFL FOX 35 ORLANDO" may not, "simply because [its] interests have changed, assume a contrary position." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (quoting *Davis v. Wakelee*, 156 U.S. 680, 689 (1895)); FAC ¶¶ 12, 15, 23. Fox still uses that caption, which the FAC dropped, seventeen days after disavowing the "dba." Doc. 27 at 1; Doc. 35 at 1 & n.1; Doc. 45 at 1. At most, a notice defect would call for amendment, not dismissal with prejudice: where notice was given and a claim is or can be stated, "it is error to dismiss with prejudice those statements . . . simply because the statements are not identical to the statements in the demand notice," and the plaintiff "should be permitted at least one opportunity to amend his complaint and demand notice," which "may be particularly important where the publication was by means of broadcast." *Nezelek*, 413 So. 2d at 56-57. *Canonico v. Callaway*, 26 So. 3d 53, 55-56 (Fla. 2d DCA 2010), *review denied*, 36 So. 3d 83 (Fla. 2010), on which Fox relies, addressed only timing: it held that a suit filed one day before the five-day notice period ended was premature, and affirmed dismissal with prejudice because limitations expired

before the notice period did, so no timely suit was possible. It said nothing about what a notice must contain. Nor did it reject cure: the plaintiff there had abandoned an abatement argument, and the court cited the Florida Supreme Court's holding that failure to follow the medical malpractice presuit process is not a fatal jurisdictional defect and may be corrected by dismissal with leave to amend if notice is served within the limitations period. *Id.* at 55 n.1 (citing *Hosp. Corp. of Am. v. Lindberg*, 571 So. 2d 446 (Fla. 1990)). Here the notice was served April 3 and suit was filed May 1, 2026, both within two years of the May 2, 2024 publications, and any amended claim arising from them relates back. Fed. R. Civ. P. 15(c)(1)(B).

F. <u>Fox Television Stations claims the content and holds the license.</u>

Fox's footnote 1 asserts that Fox Television Stations, LLC "does not do business as 'WOFL Fox 35 Orlando'" and so "remains an improper party." Doc. 35 at 1 n.1. That is a denial of FAC ¶¶ 10-15, and denials are answered, not resolved at Rule 12. Four categories of record documents show why.

First, Fox Television Stations claims the content. The Fox 35 Orlando article closes with "©2024 FOX Television Stations" on the copy Mr. Tate preserved and "©2026 FOX Television Stations" on the copy Fox filed, and Fox's own video page carries the same 2026 notice. Doc. 27-2 at 2; Doc. 20-2 at 2; Doc. 36-2 at 6. A copyright notice gives "the name of the owner of copyright in the work." 17 U.S.C. § 401(b)(3). The name Oregon Television appears on none of them. The national article names its own publisher: "© FOX News Network, LLC." Doc. 21-1 at 2.

Second, Fox Television Stations handled the notice as its own. Its registered agent recorded the April 7 service as "FOR: Fox Television Stations, LLC," and its Vice President of Legal Affairs titled her correspondence "Fox Television Stations, LLC (WOFL) was served with that attached Demand Letter." Ex. A at 1, 3-4.

Third, the FCC's public inspection file for station WOFL, Orlando, Facility ID 41225, lists the Licensee as "FOX TELEVISION STATIONS, LLC," with its main studio at the Lake Mary address pleaded at FAC ¶¶ 10-11, under a license spanning both publication dates. Ex. B. Applying to acquire the station in 2002, Fox told the FCC that Fox Television Stations "will become licensee . . . and will control the operations," under an agreement giving it "full authority, power and control over the management and operations," including "determination of programming decisions," while Oregon Television would hold the assets. Ex. C at 2, 4. The FCC had approved that structure because "FTS will control the operations of the stations." *UTV of San Francisco, Inc.*, 16 FCC Rcd 14975, ¶ 16 (2001). The Court may notice these records for what they state, without accepting any disputed fact. Fed. R. Evid. 201(b)(2); *see Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1278 (11th Cir. 1999) (noticing public filings "for the purpose of determining what statements the documents contain and not to prove the truth of the documents' contents"). They show that Fox's footnote states a contested fact, which ends the Rule 12 inquiry.

Fourth, Fox's disclosure statements show that Fox Television Stations, LLC is the sole member of Fox News Network, LLC, and that Oregon Television, LLC

shares their ultimate parent. Doc. 3 at 1; Doc. 45 at 1-2. Counsel's unsworn footnote, Doc. 35 at 7 n.4, cannot dispose of FAC ¶¶ 9 and 52, which allege the two articles were published in coordination.

Fox's own declaration is captioned against "Oregon Television Stations, LLC," an entity that is not a party. Doc. 36 at 1; Doc. 45 at 1. Mr. Tate pleads the two entities in the alternative, FAC ¶ 11, and the pleading relates back regardless: Rule 15(c)(1)(C) turns on what the added party knew, *Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538, 548-50 (2010), and Oregon Television was named in Fox's removal papers and shares counsel, the station, and the news director with the original defendants. Doc. 36 ¶ 1; Doc. 45 at 3.

G. Fox's remaining threshold arguments misdescribe the pleading.

The implication counts are pleaded in the alternative, as Rule 8(d) allows, and they plead facts rather than hypotheticals. Fox argues that Counts IV, V, VI, and VIII fail because a plaintiff cannot allege statements are false and simultaneously plead defamation by implication. Doc. 35 at 11-12. Each implication count invokes Rule 8(d)(2), FAC ¶¶ 108, 114, 120, 140, and Fox's motion does not mention those paragraphs. This Court has rejected an implication count that alleged only that a statement is actionable "[i]f the statement . . . is true or substantially true," because that allegation is "logically indistinguishable" from alleging that the statement was published and pleads no fact. *Jacoby v. Cable News Network, Inc.*, 537 F. Supp. 3d 1303, 1313 (M.D. Fla. 2021) (emphasis and internal quotation marks omitted), *aff'd on other grounds*, No. 21-12030, 2021 WL

5858569 (11th Cir. Dec. 10, 2021) (per curiam). These counts do more. Each identifies the juxtapositions that give the statements their sting and the facts Fox omitted: the headlines paired with "affidavit," "court docs," and "officials"; the booking photographs; the mother's accusation; and the omission that no firearm offense was charged. FAC ¶¶ 110, 116, 122. Count VIII rests on statements Fox itself calls true, and it pleads what the 2026 publication left out. FAC ¶¶ 142-43; Doc. 35 at 21, 24. Rule 8(d)(3) permits "as many separate claims or defenses as it has, regardless of consistency," so long as each claim alleges facts, *Jacoby*, 537 F. Supp. 3d at 1313, and at most the overlap bears on double recovery.

Nor does the single action rule reach these counts. The rule "is designed to prevent plaintiffs from circumventing a valid defense to defamation by recasting essentially the same facts into several causes of action," *Callaway Land & Cattle Co. v. Banyon Lakes C. Corp.*, 831 So. 2d 204, 208 (Fla. 4th DCA 2002) (internal quotation marks and citation omitted), and the sentence immediately before the one Fox quotes from *Kinsman* describes the rule as barring defamation claims "re-cast as additional, separate torts." *Kinsman v. Winston*, No. 6:15-cv-696, 2015 WL 12839267, at *5 (M.D. Fla. Sept. 15, 2015); *cf.* Doc. 35 at 12. The claim *Kinsman* dismissed was tortious interference; the defamation counts survived. Defamation by implication is not a separate tort. It "is a well-recognized species of defamation that is subsumed within the tort of defamation," and "[a]ll of the protections of defamation law" apply to it. *Rapp*, 997 So. 2d at 1108. The implication counts are alternative statements of one claim, which Rule 8(d)(2) permits "either in a single

count . . . or in separate ones," and "the pleading is sufficient if any one of them is sufficient." *Kinsman* thus joins the "developing story" graphic Fox said "appears nowhere," Doc. 18 at 19; Doc. 36-2 at 1, and the "dba" Fox disavows in a footnote and keeps in its caption, Doc. 35 at 1 & n.1; Doc. 45 at 1: each time the document says something Fox's description of it leaves out.

H. <u>Fault and falsity are adequately pleaded and are not Rule 12 questions.</u>

Mr. Tate is a private figure, FAC ¶ 30, so negligence is the measure of fault, *Miami Herald Publ'g Co. v. Ane*, 458 So. 2d 239, 242 (Fla. 1984), as Fox assumes. Doc. 35 at 21 n.8. Fox says it relied on "the most credible source," the police affidavit. Doc. 35 at 22. Fox's own Vice President of Legal Affairs calls it "the police affidavit that WOFL based its story on." Ex. A at 1. But the claim is not that Fox should have doubted the affidavit. It is that Fox did not report it, and a publisher that holds the record and publishes what the record does not say cannot defend on the ground that the record was reliable. The affidavit contains no "pull," no "point," and no shotgun. The pleading identifies more: the affidavit charged no firearm offense; Fox's own body text named the only charges; its own "allegedly" caption showed it knew the accusation was unproven; the tip came from an anonymous encrypted account; and the arrest was eighteen days old. FAC ¶¶ 61, 77-78.

Fox's truth argument audits three sentences out of four publications, urging that the charges, "developing story," and "approached" are "unequivocally true." Doc. 35 at 23-24; Doc. 35-1 at 2-4. Florida measures falsity by the gist of the publication, not sentence by sentence. *Rapp*, 997 So. 2d at 1108. That Mr. Tate was

charged with theft offenses does not make true the headlines that he pulled a gun on children. "Developing Story" and "Big Story" are pleaded as framing that reinforced the firearm implication, FAC ¶ 122, not as independently actionable statements, so Fox's attack on them, Doc. 35 at 20-21; Doc. 35-1 at 3, aims at a claim not made. As to "approached," Fox treats one verb as the whole statement. The pleading does not allege that Mr. Tate never spoke to the children; it alleges that he "did not approach any child in any improper, threatening, or predatory manner," and that the 2026 publication, stripped of context, conveyed that he did. FAC ¶¶ 131, 133, 142. That is the implication claim Part II.D addresses.

I. <u>No fees are available under section 768.295.</u>

Section 768.295(3) prohibits only a suit that is both "without merit" and filed "primarily because" the defendant exercised protected speech rights. If the claims survive this motion they are not without merit, and the inquiry ends. Subsection (4) awards fees only to "the prevailing party" on "a claim that an action was filed in violation of this section." § 768.295(4), Fla. Stat. Fox must show both elements, *Vericker v. Powell*, 406 So. 3d 939, 945 (Fla. 2025); the statute does not shift to the plaintiff the burden of showing merit, *Lam v. Univision Commc'ns, Inc.*, 329 So. 3d 190, 197, 199 (Fla. 3d DCA 2021) (certifying conflict); and the "primarily because" element cannot be resolved on a pleading that, as Fox reads the statute, every defamation claim against a media defendant would satisfy.

## III. CONCLUSION

Mr. Tate respectfully requests that the Court deny the motion; decline to consider Defendants' declarations (Docs. 19, 20, and 36) for any fact beyond the publications they attach or, if the Court considers them, give Rule 12(d) notice and an opportunity to submit a Rule 56(d) declaration; deny fees under section 768.295; and grant such further relief as is just. If any part of the pleading is found deficient, dismissal should be without prejudice: leave is freely given, Fed. R. Civ. P. 15(a)(2); motions to amend are timely through October 1, 2026, Doc. 24; and Fox's request for prejudice fails with its limitations argument. *See supra* Part II.E.

Dated: September 25, 2026.

Respectfully submitted,

*/s/ Kyle P. Tate*
Kyle P. Tate, FBN 27108
TATECOLLINS
P.O. Box 2427
Orlando, Florida 32802
(407) 205-6100
kyle@tatecollins.com
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 25, 2026, I filed the foregoing via CM/ECF, which will send a notice of electronic filing to all counsel of record.

*/s/ Kyle P. Tate*
Kyle P. Tate